ADELPHIA LODGE No. 1, ETC., Petitioner and Appellee, v. THE GRAND SOVEREIGN LODGE OF PUERTO RICO, ETC., Respondent and Appellant.

No. 5162. Argued May 23, 1930.—Decided July 24, 1930.

*E. Ramírez Pabón* for appellant. *José Sabater, Amador Ramírez, Enrique Báez Jr.,* and *José Benet* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a mandamus proceeding commenced by a masonic lodge, constituted in accordance with the fundamental laws of freemasonry under the jurisdiction of the Grand Sovereign

Lodge of Free and Accepted Masons of Puerto Rico, against said Grand Sovereign Lodge.

Upon the filing of the petition, which contains fourteen paragraphs and fills more than ten typewritten pages, an order to show cause was issued. The respondent moved to set aside the order on several grounds, which it stated, and filed an answer. This answer fills also more than ten typewritten pages and is carefully drawn.

After a trial was had, the court rendered a judgment commanding the respondent to surrender to the petitioner its charter finally and unconditionally. The judgment is based on the following findings of fact and conclusions of law:

"1. That on June 12, 1929, Rodolfo Ramírez Pabón, in his capacity as Grand Master of the respondent Grand Sovereign Lodge of Puerto Rico together with other directors and officers of said Grand Lodge, called at the premises where the temple of the Adelphia Lodge No. 1 is located in this city and then and there decreed the suspension of said Adelphia Lodge until the next meeting of the Grand Lodge, and then and there also withdrew and seized the charter of the petitioner lodge, carrying it with him, and took possession of the moneys, files and other property of the said Adelphia Lodge No. 1, which lodge, together with its members, has ever since been prevented from exercising its corporate rights and is now practically dissolved, it being unable to meet or to hold its sessions or to dispose of its property or funds. 2. That the Grand Sovereign Lodge of Puerto Rico held its regular quarterly meeting on July 20, 1929, in the city of San Juan, Puerto Rico, and there resolved that the charter taken from Adelphia Lodge No. 1 by Grand Master Rodolfo Ramírez Pabón be restored to the said lodge upon ratification of their masonic promises or oath of such brothers as might wish to continue as members thereof. By virtue of such proven facts the court has reached the following conclusions: First, that this court has jurisdiction of the case. 19 R.C.L. 1226. Second, that the procedure followed by respondent Rodolfo Ramírez Pabón, as Grand Master of the Grand Lodge, was irregular and contrary to the organic law of the Institution, to wit, article 12 of its constitution, inasmuch as he has no authority or power as Grand Master to take away the charter and thus practically dissolve the petitioner lodge, since the Grand Lodge itself is the only one entitled to withdraw such charter provided

that an adversary proceeding has been had and a formal decision has been rendered; and such proceeding was never had nor was the charter taken away by the Grand Lodge. Third, that although the Grand Lodge, respondent herein, resolved to return or restore the charter to the petitioner lodge, it could not do so subject to any conditions, because such charter was taken away in an irregular manner and should have been returned to petitioner unconditionally.''

Thereupon the respondent appealed, and it has assigned fourteen errors in its brief.

We wish we had time to write an opinion embracing all the quetions raised and argued, as they are of real interest. But lacking such time, we will confine ourselves to examining and determining what we consider to be the essential point involved. It is raised in the third assignment, as follows:

''3. The court erred in holding that it had jurisdiction of the subject matter of the proceeding.''

The antecedents of the case appear from the decrees of temporary suspension and of revocation of the suspension which were offered and admitted in evidence.

The first of these decrees says in part:

''Whereas, on December 19, 1928, the Worshipful Adelphia Lodge No. 1 of Mayagüez, consulted the Most Worshipful Grand Master in regard to the action to be taken by the Worshipful Master of a Lodge of this jurisdiction if a candidate refused to kiss the Bible during the initiation ceremony. Whereas, on February 6 of the present year the Most Worshipful Grand Master, through the Grand General Instructor, answered the inquiry of the Worshipful Adelphia Lodge No. 1 to the effect that if a candidate refused to kiss the Bible or any other sacred book for lack of belief in it—a fact which should be ascertained before his admission to the Lodge—then such candidate should be led outside the Temple and dismissed. Whereas, in view of the answer given by the Grand General Instructor to the aforesaid inquiry, the Worshipful Adelphia Lodge No. 1 sent out a call to all the Masonic Masters by means of a printed circular which literally reads as follows: 'On the night of May 10 this Lodge will hold a special session in third grade Chamber, at which there will be considered the question of whether or not any candidate, who acknowledges the existence of a Supreme Being but refuses to admit

as sacred books reputed to be such by revealed religions, should be accepted as a freemason. This is such an important matter for freemasons that we hope you will attend the said session. Eugenio Orsini, Worshipful Master. Salvador Lojo, Secretary.' Whereas, at the meeting held on May 10, 1929, after the above call had been sent out for said purpose, the Chamber of Masters of Worshipful Adelphia Lodge No. 1 adopted the following resolution: 'I. To disregard the letter from the Grand Instructor and to continue initiating any candidate, even though he should refuse to kiss the Bible or any other so-called sacred book; II. To notify this resolution to the Grand Lodge and to all the other lodges of this jurisdiction in order that this matter may be considered at the next quarterly meeting, and decided at the next annual meeting in the sense of amending the nine liturgies to conform to these principles.' Whereas, this resolution of the Chamber of Masters of the Worshipful Adelphia Lodge No. 1 was notified to this Grand Mastership and to the lodges of the Jurisdiction by means of an unsigned circular letter, on which there appears the seal of the Worshipful Adelphia Lodge No. 1, and as a result thereof this Grand Mastership issued a decree on June 1 of the current year overruling and disapproving the proceedings and acts of the Worshipful Adelphia Lodge No. 1 and advising the Lodges of the Jurisdiction not to take into consideration the said circular or to make any comments in connection therewith, and that at the same time fully ratifying the reply given on February 6 of the current year by the Grand Instructor General in answer to the inquiry of the Worshipful Adelphia Lodge No. 1 referred to above; and ordering and decreeing a strict compliance with the principles laid down in said answer by each and every one of the Lodges of the Jurisdiction. Whereas, the Chamber of Masters of the Worshipful Adelphia Lodge No. 1, at a regular meeting held on June 5 of the current year, ratified the resolution voted by the said Chamber on May 10, 1929, and assumed liability for the unsigned circular bearing the seal of the Worshipful Adelphia Lodge No. 1, which was communicated to this Grand Mastership and anonymously sent to the Lodges of the Jurisdiction. Whereas, the Grand Sovereign Lodge of Puerto Rico, at its quarterly meeting held on January 28, 1929, approved the Liturgies prepared by the Committee on Liturgies of the Exalted Chamber for the three symbolic degrees of Freemasonry in this Jurisdiction, and ordered their publication under the authority of this Grand Lodge and for official use exclusively in all the Lodges of our Jurisdiction. Whereas, according to the Liturgy of the Apprentice Degree approved by this Grand Lodge for official use ex-

clusively in all subordinate Lodges of this Jurisdiction, candidates, in order to show their sincerity when taking the oath that will bind them forever to our Institution, shall kiss the Holy Bible that lies on the Altar in the center of the Temple as one of the Three Great Lights of Freemasonry. Whereas, this Grand Lodge rules absolutely and exclusively over Freemasons in this Jurisdiction and is composed by a federation of the Lodges which must wholly preserve the spirit and organic form of the Institution and work uniformly in accordance with the rituals adopted by the Grand Lodge . . . . . . Whereas, by virtue of the resolution voted by the Chamber of Masters on May 10, 1929, the Worshipful Adelphia Lodge No. 1, of Mayagüez, has acted in open violation of masonic laws and traditions, in that it has performed acts which violate sections 1, 6 and 7 of the Constitution of this Grand Lodge, and sections 128 and 144 of the By-laws of the Fraternity. Whereas, the essential duties of the Lodges which constitute this Grand Lodge are to faithfully and strictly observe the Ancient Boundaries, Constitution, Statutes and other General Laws that the Grand Lodge may promulgate, as well as its By-laws; to preserve wholly the spirit and form of the Institution, and to work for the education and improvement of its members and other inhabitants of the community in which said Lodges are established. Whereas, the Worshipful Adelphia Lodge No. 1, of Mayagüez, is constituted under the jurisdiction of this Grand Lodge and for that reason it is bound to comply faithfully and strictly with the Ancient Boundaries, Constitution, Statutes and other General Laws promulgated by this Grand Lodge, as well as with its By-laws, as provided by section 13 of the Constitution of this Grand Lodge. Whereas, the Official Liturgies of this Grand Lodge were approved at a regular meeting of the Exalted Chamber and duly promulgated, and each and every one of the Lodges of this Jurisdiction were advised thereof, and their exclusive use enjoined upon all the Lodges of the Jurisdiction . . . . Whereas, until otherwise provided by the Exalted Chamber, such Liturgies as were approved for official use by this Grand Jurisdiction in January, 1928, must be maintained in all their force and effect, it being the duty of the Lodges of the Jurisdiction to work uniformly thereunder without altering or modifying them in any manner or form, regardless of the personal opinion of a freemason or group of freemasons, since acting otherwise would be injurious and disloyal to the Fraternity and an offense against the Sovereignty and Lawful Authority of this Grand Lodge . . . . Whereas, the refusal to consider a resolution of the Grand Instructor General amounts, for all legal purposes, to a contempt of the

Grand Master and disregard of the Supreme Authority conferred on the Grand Master and his delegates by the basic laws of this Grand Lodge . . . . Whereas, it is not permissible to the Lodges of this Jurisdiction or any of its Chambers to question or disapprove the resolutions of the Exalted Chamber or the decisions or resolutions of the Grand Master or his delegates. Whereas, far from making their actions conform to the true spirit of brotherhood, discipline, and order that should prevail in all masonic proceedings or acts, the Worshipful Adelphia Lodge No. 1, through its Chamber of Masters, at a regular meeting held on June 5 of this year, charges the Grand Mastership with following a course of action contrary to tolerance and to the Masonic brotherhood in denouncing and disapproving before the Lodges of the Jurisdiction as subversive and antimasonic the proceedings of said Worshipful Lodge. Therefore, acting under the power granted to me by subdivision II of section 27 of the Constitution, I, Rodolfo Ramírez Pabón, Grand Master of the Grand Sovereign Lodge of Free and Accepted Masons of Puerto Rico, RESOLVE: 1. To suspend and I do hereby suspend the Worshipful Adelphia Lodge No. 1 of Mayagüez until the next meeting of the Grand Sovereign Lodge of Free and Accepted Masons of Puerto Rico, in accordance with the above cited precept. 2. To withhold temporarily its charter until otherwise provided by the Grand Lodge. 3. To seize and safely deposit the funds and other property of the said Lodge while this decree remains in force.''

The second decree reads as follows:

''DECREE No. 11. REVOCATION OF THE SUSPENSION OF THE WORSHIPFUL ADELPHIA LODGE No. 1, AND RESTORATION OF ITS CHARTER. We, the Most Worshipful Grand Master of the Grand Sovereign Lodge of Free and Accepted Masons of Puerto Rico, to the Masonic Powers of our Friendship, to the Worshipful Lodges of our Jurisdiction, to all regular Freemasons, BE IT KNOWN: That the Most Worshipful Grand Sovereign Lodge of Free and Accepted Masons of Puerto Rico, at its regular quarterly meeting held in the City of San Juan, Puerto Rico, on the 20th of the current month, approved all the acts of the Most Worshipful Grand Master in regard to the temporary suspension of the Worshipful Adelphia Lodge No. 1, of Mayagüez, which had been decreed by me disciplinarily on June 12 of the current year pursuant to subdivision II of section 27 of the Constitution, and at the same time it resolved that the Grand Sovereign Lodge of Free and Accepted Masons of Puerto Rico meet in Mayagüez, as an Executive Committee, to revoke the suspension

of the said Worshipful Lodge and restore its charter, after ratification of the oath shall be made by such brothers as desire to continue as members of said Lodge. Therefore, acting under the lawful authority conferred upon me, I hereby DECREE the revocation of the suspension of the Worshipful Adelphia Lodge No. 1 of Mayagüez and the restoration of its charter, reinstating by virtue hereof the said Worshipful Lodge in the same condition and status which it enjoyed at the time of its disciplinary suspension. TRANSITORY DECREES. 1. All the members of the Worshipful Adelphia Lodge No. 1 shall be summoned to meet on Wednesday the 31st instant at 8 o'clock p. m., to put into effect the said resolution and to restore the charter to the said Worshipful Lodge in the manner prescribed in the resolution of the Exalted Chamber. 2. The Most Worshipful Grand Master, in his capacity as *ex officio* President of all Lodges, will serve a notice to that effect on all members of the Worshipful Adelphia Lodge No. 1 and will preside at an executive session, to be held in the Temple of the said Worshipful Lodge on the above date for the purpose of resuming the work of the said Lodge in the manner prescribed in the said resolution of the Exalted Chamber. 3. All the funds and belongings of the Worshipful Adelphia Lodge No. 1 shall be returned to its officers together with the restoration of its charter. 4. With the revocation of the suspension of the Worshipful Adelphia Lodge No. 1 and the restoration of its charter there will be resumed all the activities and connections of the said Worshipful Lodge, which may continue its work as provided for in the Constitution and other general and special laws of the Exalted Chamber. 5. The Grand Masonic Powers of our friendship are requested to publish the present Decree in their respective Jurisdictions for the proper purposes. 6. This Decree shall be effective as from the 20th of the current month, when it was resolved to revoke the suspension of the Worshipful Adelphia Lodge No. 1 and to restore its charter. 7. Any Decree or part thereof in conflict herewith is hereby repealed.''

Ruling Case Law resumes the applicable law as follows:

''As mutual benefit societies, whether incorporated or not, are formed by the purely voluntary association of individuals for the accomplishment of such objects as they have mutually agreed on, and as the selection of the purposes for which the association is established and the determination of the means by which those purposes shall be accomplished are peculiarly matters to be decided by the association alone, it is generally acknowledged that within their

own field they are as supreme in matters of discipline and internal policy, not manifestly involving private rights, as a religious society, and that the members of such organizations can undoubtedly restrict themselves as to matters incidental to the operation of the association to remedies before the tribunal created by it. Accordingly in all matters of policy, discipline, or the internal economy of the organization, the rules by which the members have agreed to be governed constitute the charter of their rights, and courts will decline, ordinarily, to take cognizance of any matter arising with reference thereto; but will leave all such questions to be settled in the manner pointed out by the regulations of the order. Whether the rules have been violated, or whether a member has been guilty of conduct which authorizes an investigation by the association, or the imposition of the penalty prescribed by it, is eminently fit for the association itself to determine; and, if the investigation is in accordance with its rules, the party charged has no ground of complaint, since it is but carrying into effect the agreement he made when he became a member of the association. For example it has been held that a committee of the society acting within the rules and laws thereof in expelling a member will be upheld and their decision will not be questioned. Unless there is also involved the determination of some civil right, or right of property, the courts will not interfere with the rules of organizations of this character, and equity will not enjoin the trial of a member where the proceedings are in strict accordance with the rules of the order, nor issue a mandatory injunction to compel the secret password of the grand lodge of a benevolent society to be given to a delegate of a subordinate lodge to permit him to participate in its deliberations, unless some property right is also involved.

" . . . . While, as a rule, the courts will not interfere in the affairs of benevolent and beneficial associations when only questions of discipline, doctrine, or internal policy are involved, it does not follow that they will not exercise jurisdiction when property rights are involved. When a member seeks to enforce a property right or money demand against such an organization, the contractual relation which exists between the society and its members calls for the application of a different rule, and in such cases the courts will entertain jurisdiction and afford relief. When associations of this character proceed so arbitrarily as manifestly to violate the private rights of their members, as where they attempt to nullify their contracts of insurance and to substitute others therefor of an entirely different

nature under the guise of amending their by-laws, they are amenable to the law the same as any other person, natural or artificial. Moreover, it has been held that the courts have jurisdiction to interfere against the decision of the members of an association, or of a tribunal provided for by them, where it can be shown that its rules are immoral, contrary to public policy, or in contravention of the law of the land; or where the rules though valid were not observed, as where an expelled member was given no notice or opportunity to be heard in his own defense; or where the tribunal was actuated by bad faith or malice in arriving at its conclusion. Thus, mandamus may issue to compel an association to restore to membership an expelled member, where the offense of which he was convicted did not justify his expulsion, or where the proceedings have been irregular in substantial particulars. To invoke the aid of the courts, however, the allegations of the member's complaint must show that his contractual or property rights are involved, though they need not anticipate and refute possible defenses under the by-laws, as it is sufficient if his complaint makes out a prima facie case. In the case of voluntary unincorporated associations it must not only appear that the court is under obligations to act, but that it can act effectively in the premises." 19 R.C.L. 1224 *et seq.*

Examining the facts in the light of the jurisprudence, it clearly appears at first view that what is really involved in the instant case is something internal, of the domestic concern of the masonic order, to be determined by its own regulations as applied and construed by its recognized powers and not by the judicial tribunals.

In support of its claim, the petitioner lodge maintains that the decrees of suspension and revocation of suspension issued by the Grand Master and the Grand Sovereign Lodge, respectively, are in conflict with subdivision 2 of Article I of the Puerto Rican Masonic Constitution, which says:

"The Moral Law and Natural Justice are its principles dictated by reason and defined by science; it acknowledges a Supreme Being, recognizes no difference among men except by reason of their merits, rejects nobody on account of belief or opinions and does not permit controversies on religion or politics."

The petitioner also adverts to several procedural questions and states that, neither the conduct of the Grand Master nor the procedure followed by the Grand Sovereign Lodge in deciding the appeal taken to it by the petitioner conforms to the rules of the order itself.

We can appreciate the essential point involved and there is no doubt that the questions of procedure raised have merit; but neither the first of those questions nullifies the fact of the existence of practices and rules, relied upon by the Grand Master of the Grand Lodge and acquiesced in by the petitioner lodge and its members upon admission to the institution, nor is the second question stated of such a character as to affect private rights to the extent of requiring the intervention of the courts.

Furthermore, no property right is really involved. In the petition the question was raised as to the insurance of the members of the Lodge, citing the case of one of these who had died and whose family had not received the corresponding insurance proceeds by reason of the suspension. The respondent showed that in the particular case, notwithstanding the suspension, there had been issued the proper vouchers and a check in favor of the beneficiaries, and that if the check had not been cashed this was due to the fact that the petitioner itself had prevented it.

The original impression subsists after a careful examination of the record. We think that judicial interference in cases of this kind would cause a greater evil than that sought to be avoided. The inner functioning, the internal régime of such institutions as the church, freemasonry, and others, is their private concern; and one part can not prevail over the whole. There are limits, of course—the violation of a right of the citizen guaranteed by the law, or the commission of acts that are in conflict with public policy or in contravention of the laws of the land. In the present case there is nothing to show that those limits have been reached or overstepped

and, therefore, the courts lack jurisdiction. The determination of the question whether, on being initiated, masons should kiss the Bible "that lies on the Altar in the center of the Temple as one of the Three Great Lights of Freemasonry," which is the only question really involved in this litigation, is of the exclusive jurisdiction of freemasonry.

The judgment appealed from should be reversed and another rendered instead denying the petition, without special imposition of costs.